IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
MAY 17, 2005 Session

## KINA CRIDER, ET AL. v. THE COUNTY OF HENRY, TENNESSEE

**Direct Appeal from the Circuit Court for Henry County**
**No. 2358     C. Creed McGinley, Judge**

_____

**No. W2005-00223-COA-R3-CV - Filed August 19, 2005**

_____

The plaintiff filed a motion for summary judgment with the trial court. After conducting a hearing on the motion, the trial court entered an order which amounted to a denial of the plaintiff's motion. Accordingly, the trial court's order does not constitute a final judgment which the plaintiff may appeal to this Court. This appeal stands dismissed for lack of appellate jurisdiction.

**Tenn. R. App. P. 3; Appeal as of Right; Appeal Dismissed for Lack of Subject Matter Jurisdiction**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Richard L. Dunlap, III, Paris, TN, for Appellant

Lee M. Greer, III, Paris, TN, for Appellee

# MEMORANDUM OPINION[1]

## I.
### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Kina Crider ("Ms. Crider" or "Appellant") and her children are African Americans, and Ms. Crider's children attend the Paris Special School District ("PSSD") located in Henry County ("County"), Tennessee. The Tennessee General Assembly created the PSSD in 1919 by private act. *See* 1919 Tenn. Priv. Acts ch. 150. The PSSD is a distinct entity and is not affiliated with the City of Paris, Tennessee. The PSSD owns the real property upon which it operates three elementary schools educating children from kindergarten through the eighth grade. Pursuant to the private act which created it, the PSSD is able to impose its own taxes for purposes of funding the PSSD. *See* 1919 Tenn. Priv. Acts ch. 150. Statistical data indicates that 26% of the students attending the PSSD are minorities while 3% of the students attending the County schools in kindergarten through eighth grade are minorities.

The Tennessee Valley Authority ("TVA") was created by the United States Congress with the passage of the Tennessee Valley Authority Act of 1933. *See* 16 U.S.C. § 831 (2004). Congress expressly exempted TVA "from taxation in any manner or form by any State, county, municipality, or any subdivision or district thereof." 16 U.S.C. § 831*l* (2004). Perhaps realizing that the land acquired by TVA for purposes of its operations would deprive local governments of a significant source of tax revenue (*i.e.*, property taxes), Congress provided as follows:

> In order to render financial assistance to those States and local governments in which the power operations of the Corporation are carried on and in which the Corporation has acquired properties previously subject to State and local taxation, the board is authorized and directed to pay to said States, and the counties therein, for each fiscal year, . . . percentages of the gross proceeds derived from the sale of power by the Corporation for the preceding fiscal year as hereinafter provided, together with such additional amounts as may be payable pursuant to the provisions hereinafter set forth . . . .

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee governs the issuance of Memorandum Opinions and provides as follows:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

16 U.S.C. § 831*l* (2004). In accordance with the aforementioned provisions, TVA provided funds to the County in lieu of taxes,[2] and the County earmarked these funds for use in funding its school system. Around 1986, the County adopted a resolution directing that a portion of the TVA funds be allocated to the PSSD, and, for the 2002–2003 academic school year, the PSSD received approximately $289,000.00 from the County. While the City of Paris also received payments from the TVA in lieu of taxation, it has not provided any financial assistance to the PSSD.

On June 16, 2003, the County Commission passed a resolution to repeal its prior 1986 resolution which provided funding to the PSSD from funds the County received from the TVA. The County sought to "phase-out" the funding to the PSSD by providing $150,000.00 for the 2003–2004 academic year, $75,000.00 for the 2004–2005 academic year, $75,000.00 for the 2005–2006 academic year, and no funds thereafter. Thereafter, the PSSD raised its property tax rate from $.23 per $100.00 of assessed property value to $.46 per $100.00 of assessed property value. The PSSD also increased its tuition for non-district students from $50.00 to $100.00 per academic year.

On July 21, 2005, Ms. Crider, individually, on behalf of her two children, and on behalf of all children enrolled in the PSSD, filed a complaint against the County in the Circuit Court of Henry County. After numerous amendments to her complaint, Ms. Crider alleged that the County's actions in eliminating funding from TVA payments for the PSSD violated certain provisions of the Tennessee Education Finance Act of 1977, codified at section 49-3-301 *et seq.* of the Tennessee Code; the Tennessee Human Rights Act, specifically section 4-21-501 of the Tennessee Code; and certain provisions of the Tennessee Constitution. The County did not file an answer or otherwise respond to Ms. Crider's complaint. On May 26, 2004, Ms. Crider filed a motion for summary judgment in the trial court along with her statement of material facts and numerous affidavits. On October 27, 2004, the County responded by filing a brief in opposition to Ms. Crider's motion with the trial court, which Ms. Crider moved to strike. The trial court denied Ms. Crider's motion to strike the County's affidavit, and a hearing on her motion for summary judgment was conducted on October 28, 2004. At the conclusion of the hearing, the trial court stated to the parties that he was denying Ms. Crider's motion for summary judgment as to all of her claims, and the trial court entered an order on November 23, 2004, reflected its ruling.

Ms. Crider filed an appeal to this Court presenting numerous issues for our consideration, which, in essence, can be restated as follows:

1. Whether the trial court erred in denying her motion for summary judgment as to the alleged violations of certain Tennessee statutes; and
2. Whether the trial court erred in denying her motion for summary judgment as to the alleged violations of her constitutional rights under the Tennessee Constitution.

---

[2] For fiscal year 2002–2003, the County received $687,771.00 from TVA, and the County received $829,026.00 from the TVA for fiscal year 2003–2004.

For the reasons set forth more fully herein, we dismiss this appeal because the trial court's order does not constitute a final judgment over which this Court may properly exercise jurisdiction.

## II.
### DISCUSSION

At the conclusion of the hearing on Ms. Crider's motion for summary judgment, the trial court made the following statement to the parties:

THE COURT:      The Court having considered the briefs of memoranda, all of the affidavits, the undisputed facts in this case, finds that *this matter is not an appropriate case for summary judgment as to either of the plaintiff's theories*.

As to the first theory, the allocation situation, the Court finds particularly controlling Tennessee Code Annotated 49-3-315, as well as the statutory authority of the Anderson County, City of Oak Ridge case that's been cited to the Court.

Concerning the second issue, the alleged racial component to this, the Court finds that *there is a genuine issue of material fact, and a summary judgment would be inappropriate*. Draft your order, please.

(emphasis added). After making this statement, counsel for the County inquired about a trial setting and indicated more discovery would take place prior to trial. Thereafter, the following exchange occurred between counsel for the parties and the trial court:

THE COURT:      As to issue number two, I would suspect — the racial component, there would be significant discovery to take place on that.

MR. GREER:      Yes, sir.

THE COURT:      Zero he says.

MR. DUNLAP:      Your Honor —

THE COURT:      How soon can this be ready?

MR. DUNLAP:      I would like to waive the right to introduce any more proof and appeal the Court's order.

THE COURT:      Sustained.

MR. GREER:      So we're going to have an

|              |                                                                 |
|--------------|-----------------------------------------------------------------|
|              | interlocutory appeal?                                           |
| THE COURT:   | Essentially.                                                    |
| MR. GREER:   | All right, so I should put that in the order?                   |
| THE COURT:   | As to the application of this funding statute, he wants to take that matter up, which I think is absolutely the controlling issue in this case. |
| MR. GREER:   | Sure.                                                           |
| THE COURT:   | I have no problem. I think it's purely a matter of law. As far as the interpretation of the statutes and how they apply to the case, I think it's entirely appropriate. So draft — |
| MR. GREER:   | Yes.                                                            |
| THE COURT:   | — this Court's finding today as a final order. You'll be going up on Rule 3 appeal, I guess, whatever the rule is. |
| MR. GREER:   | All right, I'll put that in the order.                          |
| THE COURT:   | Okay.                                                           |
|              | . . . .                                                         |
| THE COURT:   | I think it would be an interlocutory appeal as to issue number two. Maybe the whole thing would be. But one is a factual issue, the other is purely an issue of law. |
| MR. GREER:   | Yes, sir.                                                       |
| THE COURT:   | So however you want to word it.                                 |
| MR. DUNLAP:  | I just want to go up on the issue of law, Your Honor.           |
| MR. GREER:   | On the TVA part, is that what you're saying?                    |
| MR. DUNLAP:  | Yes.                                                            |
| MR. GREER:   | All right, yes, sir.                                            |
| THE COURT:   | You'd better draft it as a final order to make sure they take it. |
| MR. GREER:   | Yeah.                                                           |
| THE COURT:   | Okay.                                                           |
| MR. GREER:   | Well, he has a right to appeal that. That's not an interlocutory appeal, is it? I think — it doesn't matter to me. I'll put it either way. If he wants to appeal, I'm going to let him. |
| THE COURT:   | Make it a final judgment.                                       |
| MR. GREER:   | Yes, sir.                                                       |

In the trial court's "Final Order," the trial court denied Ms. Crider's motion for summary judgment and stated as follows:

> This cause came to be heard . . . upon *the Motion for Summary Judgment filed by the plaintiff*[,] . . . the announcement made in open Court that the plaintiff did not wish to introduce any further evidence in this matter[,] the stipulation that a ruling on the Motion for Summary Judgment would constitute a final order or judgment as concerns the merits of the plaintiff's cause of action; from all of which *this Court finds that the motion of the plaintiff is not well taken.* This Court further finds that there is no just reason for delay in the entry of this judgment.
>
> Consequently, it is hereby ORDERED that judgment be entered in favor of defendant and against the plaintiff.
>
> It is further ORDERED that there is no just reason for delay and, therefore, this Court directs that this judgment be entered as a final judgment.

"This Court may *sua sponte* review the record on appeal to determine if we properly have jurisdiction." **Huntington Nat'l Bank v. Hooker**, 840 S.W.2d 916, 922 (Tenn. Ct. App. 1991); *see also* Tenn. R. App. P. 13(b)(2004) ("The appellate court shall also consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review[.]"). Despite the efforts by the trial court and counsel for the parties toward creating a final judgment, our review of the record reveals that the order entered by the trial court does not constitute a final judgment over which this Court may properly exercise jurisdiction.

Rule 3(a) of the Tennessee Rules of Appellate Procedure provides, in relevant part, as follows:

> In civil actions every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right. *Except as otherwise permitted in Rule 9 and in Rule 54.02 Tennessee Rules of Civil Procedure*, if multiple parties or multiple claims for relief are involved in an action, *any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable* and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties.

Tenn. R. App. P. 3(a) (2004) (emphasis added). In the present action, we note, as the trial court did, that Ms. Crider alleged, in essence, two causes of action against the County in her complaint: (1) violations of certain Tennessee statutes, and (2) violations of their constitutional rights under the

Tennessee Constitution. Ms. Crider subsequently moved for summary judgment, and the trial court ruled at the conclusion of the hearing as follows: "this matter is not an appropriate case for summary judgment as to either of the plaintiff's theories."

We find the following statement by our supreme court to be dispositive of this case on appeal:

> *When a plaintiff's motion for summary judgment has been overruled, he has simply lost a preliminary skirmish and must proceed to trial . . . .* In Wright & Miller, Federal Practice and Procedure, Civil Sec. 2715, at page 424, the effect of overruling a motion for summary judgment and the ensuing procedure is stated as follows:
>
>> A denial of summary judgment indicates that the moving party has failed to establish that there is no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law; *a trial therefore is necessary.*
>
> We approve this language as a general rule of law in this jurisdiction . . . . Generally speaking, *the action of a trial judge in overruling a motion for summary judgment is interlocutory in character and is not appealable.* Normally, appeals lie only from final judgments. *Aetna Casualty & Surety Co. v. Miller*, 491 S.W.2d 85 (Tenn. 1973).

***Williamson County Broad. Co. v. Williamson County Bd. of Educ.***, 549 S.W.2d 371, 372–73 (Tenn. 1977) (emphasis added); ***see also Oliver v. Hydro-Vac Services, Inc.***, 873 S.W.2d 694, 696 (Tenn. Ct. App. 1993).[3] The plaintiff in this case, Ms. Crider, filed a motion for summary judgment

---

[3] We cannot interpret the trial court's order as an attempt by the trial court to create a final judgment as to one of the Appellant's causes of action pursuant to Tenn. R. Civ. P. 54.02. The County did not file a motion for summary judgment, therefore, we cannot say that the trial court is, in essence, granting summary judgment to the County on one of Ms. Crider's claims. Such an interpretation of the order would also fail to explain why the Appellant has raised issues relating to both of the causes of action alleged in her complaint in her brief filed in this Court. Rule 54.02 permits the trial court to "direct the entry of a final judgment *as to one or more but fewer than all of the claims*." Tenn. R. Civ. P. 54.02 (2004) (emphasis added).

Moreover, given the nature of the language selected by the trial court in its order (*i.e.*, "that judgment be entered in favor of defendant and against the plaintiff") and the statement by counsel for Appellant at the hearing (*i.e.*, "I would like to waive the right to introduce any more proof and appeal the Court's order"), one could argue that Appellant chose to "stand" (*i.e.*, refused to prosecute the action after her motion for summary judgment was denied) on her motion for summary judgment. As our supreme court has stated, however, "[g]enerally speaking, when a party plaintiff 'stands' on his unsuccessful motion for summary judgment, the proper procedure is for the trial judge to dismiss for want of

(continued...)

which the trial court denied.  Accordingly, we dismiss the present appeal because the trial court's order is not final, and Ms. Crider must proceed to trial.

## III.
### CONCLUSION

For the foregoing reasons, we dismiss the Appellant's appeal since the trial court's order does not constitute a final judgment over which this Court may properly exercise appellate jurisdiction. Costs of this appeal are to be taxed to the Appellant, Kina Crider and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE

---

[3](...continued)
prosecution." ***Williamson County Broad. Co. v. Williamson County Bd. of Educ.***, 549 S.W.2d 371, 373 (Tenn. 1977); *see also* Tenn. R. Civ. P. 41.02 (2004).

In any event, given the confusion surrounding the entry of the trial court's order in this case, the nature of the motion before the trial court, and the trial court's statements during the hearing, we can only conclude that the trial court's order amounts to a denial of the Appellant's motion for summary judgment on both of her claims.